IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mark Lott, | Civil Action No. 2:18-cv-1777-RMG |
| Plaintiff, | |
| | **ORDER AND OPINION** |
| v. | |
| Timothy Budz | |
| Defendant. | |

Before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge. (Dkt. No. 107.) recommending that the Court grant Defendants' Motion for Summary Judgment. (Dkt. No. 85.) Also before the Court is Plaintiff's motion for subpoena. (Dkt. No. 111.) For the reasons set forth below, the Court adopts the R & R, and grants Defendants' Motion for Summary Judgment and denies Plaintiff's motion for subpoena.

### I. Background

Plaintiff brought a *pro se* action under 42 U.S.C. § 1983 on June 28, 2018. (Dkt. No. 1.) Plaintiff is a civilly-committed individual in the Sexually Violent Predator Treatment Program ("SC SVPTP") at the state facility Correct Care Solutions ("CCRS") located in Columbia South Carolina. Plaintiff alleges that on May 23, 2018, W., a civilly-committed individual, began assaulting another civilly-committed individual, G., in the recreation yard. (Dkt. No. 11 at 5.) Plaintiff alleges he jumped on G. to protect him and W. began to hit and stab Plaintiff with a pen and fists. *(Id.* at 5–6.) Plaintiff alleges that CCRS staff restrained W. while waiting for help to arrive. *(Id.* at 6.) Plaintiff alleges the staff were not at their posts and did not have radios that day. *(Id.)* Plaintiff alleges Timothy Budz, Director of CCRS was "well aware of . . . [W.'s] violent behaviors . . . since [CCRS] took over the program. *(Id.)*

Plaintiff alleges claims for negligence, failure to protect, and mitigating circumstances. (*Id.* at 4.) In addition, the complaint alleges Plaintiff's constitutional rights were violated under the First, Eighth, and Fourteenth Amendments. (*Id.*) Defendant produced several incident reports that recount the incident at issue all dated May 23, 2019. (Dkt. Nos. 84-2, 105-2.) In addition, Defendant produced a video of the incident, which does not provide a clear view of the altercation. On April 29, 2019, Defendants filed a motion for summary judgment and Plaintiff responded. (Dkt. Nos. 85, 91, 110, 112.) The Magistrate Judge recommended dismissing Plaintiff's § 1983 claims. (Dkt. No. 107.) Plaintiff filed objections to the R & R and subsequently filed a motion for subpoena. (Dkt. Nos. 109, 111.) Defendant filed responses to Plaintiff's objection to the R & R and Plaintiffs motion for subpoena. (Dkt. No. 114, 115.)

## II. Legal Standard

### A. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *US. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id. quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## B. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). In the absence of any specific objections, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Plaintiff filed objections and therefore the R & R is reviewed de novo.

## III. Discussion

As the Magistrate Judge ably found, Plaintiff's § 1983 claims fail. Plaintiff asserts a failure to protect claim while also asserting claims for negligence and mitigating circumstances. (Dkt. No. 11 at 5–6.) The Magistrate Judge concedes that Plaintiffs claims for negligence and mitigating circumstances are not actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986)

328 (1986) (holding the Due Process Clause is "simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.") Failure to protect claims filed by a civilly committed SVP are analyzed under a standard coextensive with that applicable to persons under the Eighth Amendment. *Francis v. Watson*, No. C/A3:05-2499-JFA-JRM, 2006 WL 2716452, at *6 (D.S.C. Sept. 22, 2006). The Eighth Amendment is not violated by the "negligent failure to protect inmates from violence." *Id.*

Plaintiff is a civilly committed individual under the Sexually Violent Predator Act. S. C. Code Ann. § 44-48-10. This type of custody most closely resembles that of a pre-trial detainee. *Treece v. McGill*, Case No. 3:08-cv-03909-DCN, 2010 WL 3781695, at *4 (D.S.C. Sept. 21, 2010). The Due Process rights of a pre-trial detainee are at least equal to Eighth Amendment protections available to a protected prisoner. *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). The Eighth Amendment requires prison officials to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The burden is on the petitioner to demonstrate that prison officials violated the Eighth Amendment and the burden is heavy. *Pyles v. Fahim*, 771 F.3d 403, 408–9 (7th Cir. 2014).

"Deliberate" or "callous indifference" on the part of a prison official to a "specific known risk of harm" states an Eighth Amendment claim. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). Not every "injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A prison official may be held liable under the Eighth Amendment for an act or omission that results in the denial of "minimal civilized measure of life's necessities." *Id.* The prison official must have a "sufficiently culpable state of mind." *Id.* This means the prison official must have acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 302–3 (1991). A prison

official acts with deliberate indifference if he has "actual knowledge that an inmate faces substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 835. The test is not "whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard[ed] that risk." *Id.* The official must be aware of facts which "the inference could be drawn that a substantial risk of serious harm exists" and he must also "draw the inference." *Id.* at 837.

The Magistrate correctly concluded that there is no issue of fact as to whether Defendant had actual knowledge that W. posed a substantial risk of harm to Plaintiff and that Defendant disregarded that risk. The Court carefully reviewed the parties arguments on summary judgment (Dkt. Nos. 85, 91, 109, 110, 112.) in addition to the record before it. In a prior discovery order, the Court ordered Defendant to produce records dating back two years prior to May 23, 2018 and detailing violent encounters between W. and other civilly-committed individuals, including Plaintiff, and additional records that would demonstrate W.'s violent history. (Dkt. No. 78 at 2.) The Court reviewed the records which include incident reports documenting encounters between W. and Plaintiff prior to May 23, 2018. On December 31, 2016, W. struck Plaintiff and W. was placed in his room until further notice. (Dkt. No. 84-2 at 1.) On January 1, 2017, Captain Howell spoke to W. about not threatening others in the unit. (Dkt. No. 84-2 at 2.) A second incident occurred on April 23, 2017, where W. approached Plaintiff and threatened him. (Dkt. No. 84-2 at 3.) A third incident occurred on May 3, 2017, when W. threatened Plaintiff saying he could "beat the shit out of him" and he was "tired of . . . [Plaintiff] lying on him." (Dkt. No. 84-2 at 5.)

Defendant submitted an affidavit averring that "the other resident [W.] is not considered a threat to Plaintiff any more than he is considered a threat to any resident. Based upon my professional judgment and knowledge and familiarity with the other resident [W.], there was no

known threat or risk to Plaintiff." (Dkt. No. 85-1 at 2–3.) Defendant avers that Plaintiff never complained to him about W., and "upon information and belief" Plaintiff did not complain to any other CCRS employee regarding W. (*Id.* at 3.)

In addition, Defendant presents the affidavit of Jarad Anderson, Security Director for CCRS. (Dkt. No. 85-2.) Defendant and Anderson aver that "[CCRS] enacted security measures to protect residents at the SC SVPTP. [CCRS] employs Therapeutic Security Technicians ("TST") and Custody Officers ("CO") to provide . . . support to residents by continuously monitoring resident and unit activities." (Dkt. Nos. 85-1 at 2; 85-2 at 1.) In addition, they allege the TSTs are responsible for maintaining the safety of the residents by conducting safety inspections and taking necessary actions to correct, deescalate, and/or halt resident behavior including physical restraint of residents. (*Id.*) They aver TSTs monitor residents while they are moving within the facility and in the recreation yard. (*Id.*)

Anderson avers he manages all shift supervisors, shift assignments, and security details and that Defendant does not determine how many security personnel are on duty at once. (Dkt. No. 85-2 at 2.) Regarding the incident on May 23, 2018, Anderson avers that extra staff were on duty and that CCRS maintains enough radios for each staff member. (*Id.*) He also avers that he is familiar with W. and did not consider W. to be a security threat to Plaintiff any more than he was a threat to any other resident. (*Id.*) He avers W. was not prohibited from the yard on May 23, 2018 and there was no physical or verbal threat made to Plaintiff prior to the incident. (*Id.*)

The record before the Court demonstrates there is no issue of material fact regarding Defendant's lack of knowledge whether W. posed a substantial risk of harm to Plaintiff and that he did not consciously disregard the risk. The incident reports reflect that Plaintiff and W. had three encounters in the two-year period prior to the May 23, 2018 incident. Only one encounter

turned physical and the latest encounter occurred approximately one year prior to the May 23, 2018 incident. Further, Defendant avers that he did not think W. was a threat to Plaintiff. Although Plaintiff argues in his opposition to motion for summary judgment and in his objections to the R & R that there is evidence he complained to Defendant about W., the record does not reflect those communications. (Dkt. Nos. 91 at 2; 109.) There is no evidence to show Defendant failed to take security precautions for Plaintiffs safety or demonstrated a deliberate indifference to a specific known harm of risk. In addition, there is no evidence to show Defendant was aware of facts from which an inference could be drawn that W. posed a substantial risk of harm to Plaintiff and Defendant drew the inference. *Farmer*, 511 U.S. at 844. As the Petitioner cannot demonstrate Defendant had actual knowledge of a harm and consciously disregarded it, his § 1983 claim fails. The Court adopts the conclusion of the Magistrate Judge to grant Defendant's motion for summary judgment.

The Court reviewed Plaintiff's motion for subpoena (Dkt. No. 111.) Plaintiff requests video and incident reports from an alleged incident that occurred on August 10, 2019. (Dkt. No. 111).[1] Plaintiff alleges that resident W. is a threat to anyone around and that on August 10, 2019, resident W. assaulted an additional resident. (Dkt. No. 110). Plaintiff's request for incident reports and video of the August 10, 2019 incident regards a different altercation involving resident W., and Plaintiff does not allege that he was involved. Further, the August 10, 2019 incident occurred over a year after the altercation for which Plaintiff filed this lawsuit. (Dkt. No. 111.) The requested incident reports and video would not provide evidence to show Defendant had actual knowledge

---

[1] These allegations are also referenced in Plaintiff's second motion in opposition to Defendant's motion for summary judgment (Dkt. No. 110).

-7-

that W. posted a substantial risk of harm to Plaintiff and that Defendant disregarded that risk, therefore, Plaintiff's motion for subpoena is denied.

## IV. Conclusion

For the reasons set forth above, the Court **ADOPTS** the R & R. (Dkt. No. 107.) Defendant's motion for summary judgment (Dkt. No. 85) is **GRANTED**. Plaintiff's motion for subpoena is **DENIED** (Dkt. No. 111.)

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 18, 2019
Charleston, South Carolina